# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO: 8:10-cr-339-T-26AEP

MICHAEL MEISTER

_____/

## **O R D E R**

Before the Court is Defendant Michael Meister's Motion to Suppress and Post

Hearing Brief (Dkts. 61 & 99), the Government's Post Hearing Brief (Dkt. 108), and the

Reply.  (Dkt. 115).  An evidentiary hearing was held on the motion to suppress on January

24 and 25, 2011.  (Dkt. 91 & 92).  Having heard the testimony and argument at the

hearing and having considered the post-hearing briefs and the entire file, the Court

concludes that the motion should be denied.

## BACKGROUND

Defendant Michael Meister (Defendant) was indicted in 2010 for two counts of

possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and one count

of distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2).  (Dkt. 1).  The

counts arise from the discovery of the materials on Defendant's personal laptop computer

when he left it at True North Systems (True North), a computer shop, for repair.  The

laptop was found inoperable by True North, so Defendant purchased a new laptop

computer there on July 30, 2007.  The data from the hard drive of the old laptop was required to be transferred first to True North's computer system before being transferred to his new laptop computer.  True North employed only two people: Todd Zadnick (Zadnick), the owner and computer technician, and Sean Kuchle (Kuchle), a computer technician.

## SUPPRESSION HEARING

The following facts were elicited at the suppression hearing held on January 24, 2011.  When Kuchle came to work on July 30, 2007, Zadnick asked him to transfer the data from Defendant's old laptop computer hard drive to the new laptop computer. (Vol. I, Tr. at 225).  The data had to be transferred to a tower on True North's system before it could be transferred to the new laptop computer purchased by Defendant because True North did not have a mechanism by which to transfer the data directly to the laptop on that date in 2007.  (Vol. I, Tr. at 230-231).  In any event, the hard drive from the old laptop was considered unstable by Kuchle and it saves them time to transfer the data to True North's machine before transferring to the new, purchased laptop.  (Vol. I, Tr. at 192-193).  Zadnick corroborated the fact that they could not have transferred the data directly from the laptop to the newly-purchased laptop because a device to perform that function did not exist at that time.  (Vol. I, Tr. at 229).  Defendant approved the transfer and placed no restrictions on what could be viewed during the process of data transfer. (Vol. I, Tr. at 232 & 235).  Defendant testified, however, that he did not know that the

data would be viewed in the transferring process, and had he known, he would not have left his computer with True North. (Vol. II, Tr. at 5-8).

Kuchle discovered the pornographic materials on the laptop's hard drive as he was transferring the files to True North's system. He told Zadnick that the file names were of a "disturbing nature." (Vol. I, Tr. at 189). Both Kuchle and Zadnick looked at them after the transfer was completed to make sure the data matched the name of the files. (Vol. I, Tr. at 189, 191 & 212). They agreed that the graphics matched the "disturbing nature" of the file names. (Vol. I, Tr. at 189 & 191). The images were viewed on True North's system after they had been transferred from Defendant's laptop. (Vol. I, Tr. at 212). Neither Zadnick nor Kuchle was working for law enforcement when they viewed the images, and law enforcement had not directed them to search Defendant's laptop or the data. (Vol. I, Tr. at 191).

Zadnick then called Sergeant Matson of the Kenneth City Police Department about the computer, which was in the early afternoon of July 30, 2007. (Vol. I, Tr. at 193 & 223). Officer Vieno responded to the call and came by the store to pick up the old laptop in the early afternoon.[1] (Vol. I, Tr. at 200, 237 & 250). Officer Vieno testified that he responded to True North on July 30, 2007, at 1:30 p.m. (Vol. I, Tr. at 112 & 115). Both Zadnick and Kuchle told him when he arrived that they found child pornography on a

---

[1]  It is undisputed that Officer Vieno at least picked up the old laptop computer on July 30th. Whether he picked up other items is unclear, and will be addressed later.

customer's laptop. (Vol. I, Tr. at 112). Officer Vieno met with a Lieutenant Baute of the Florida Attorney General's Office and a Florida Department of Law Enforcement (FDLE) agent the next day, on July 31st at 2:30 p.m., at True North. (Vol. I, Tr. at 134-135, 139-140 & 175). Officer Vieno did not recall whether he went back to True North on the morning of July 31st. (Vol. I, Tr. at 175-177).

There were discs (DVDs) made at some point of the data that was removed from the laptop at True North, but neither Zadnick nor Kuchle had any memory of when the discs were made, although Zadnick was fairly sure that Kuchle made the discs. (Vol. I, Tr. at 196-197 & 239). Kuchle did acknowledge that, at the direction of the police, he made the discs from True North's shop machine, but he could not remember exactly when he made them, either July 30th or July 31st. (Vol. I, Tr. at 196-197, 202 & 208-209). After Kuchle made the discs, he erased the data from the True North system at the direction of the police. (Vol. I, Tr. at 202-203 & 207-208).

Zadnick testified that he did not know why he initially stated in 2010 that no one had made any discs (DVDs). (Vol. I, Tr. at 240). He testified that "very apparently they were made and I remember something about it, but I don't remember when they were made." (Vol. I, Tr. at 240). Zadnick had no independent recollection of Officer Vieno picking up DVDs of the pornography in addition to the laptop. (Vol. I, Tr. at 242).[2]

---

[2]    When Zadnick was read Officer Vieno's police report stating that he took the laptop, the surveillance tape, and the DVD of the computer data on the morning of July 30th, he testified that he had no recollection of him taking anything other than the laptop.

Zadnick recalled that Officer Vieno came to True North on July 30th and returned with Lieutenant Baute on July 31st in the afternoon. (Vol. I, Tr. at 237 & 244-245). Zadnick thought that Officer Vieno took only the laptop on July 30th. (Vol. I, Tr. at 237). Zadnick did not really know if Officer Vieno ever took any DVDs. (Vol. I, Tr. at 237-238 & 244-245).

Officer Vieno's report can be interpreted to state that he took "the DVD" on July 30th. (Vol. I, Tr. at 89). Officer Vieno testified, however, that he has no independent recollection of when he picked up the two DVDs, or discs, copied Sean Kuchle containing the pornographic data from Mr. Defendant's laptop. (Vol. I, Tr. at 133, 147, 154 & 181). He remembers that he took the laptop and the surveillance tape on July 30th. (Vol. I, Tr. at 147). He testified that he may have picked up the DVDs on either July 30th or 31st. (Vol. I, Tr. at 148, 154-155, 157 & 173). The DVDs containing the pornography copied from the original hard drive, as well as the laptop, were not placed in the property room at the Pinellas County Sheriff's Office. (Vol. I, Tr. at 88). Only the surveillance tape from True North was actually placed in a property room at the sheriff's office. (Vol. I, Tr. at 88).[3] The DVDs and Mr. Meister's old laptop were placed in a locker at the

_____

(Vol. I, Tr. at 237 & 242).

[3] Officer Vieno collected the surveillance tape from True North on July 30, 3007, and the surveillance tape was logged into the Pinellas County Sheriff's Office. (Vol. I, Tr. at 82-83). Nothing else was sent to the Pinellas County Sheriff's Office for storage.

Kenneth City Police Department, the locker belonging to Officer Vieno. (Vol. I, Tr. at 90-91 & 253).

Although the usual protocol involved using the sheriff's office for property and evidence storage, Sergeant Matson decided that the laptop should be kept at the police station in a locker so that Lieutenant Baute[4] could come pick it up the very next day. (Vol. I, Tr. at 253 & 266). Lieutenant Baute testified that the only person with control over the locker was Officer Vieno, the only person with a key to the locker. (Vol. I, Tr. at 77). Neither Officer Vieno nor Lieutenant Baute[5] viewed the data containing the pornography at True North. (Vol. I, Tr. at 214-215).

An analysis of the discs by Defendant's expert, Robert Moody (Moody), revealed that the information was completely transferred to True North's computer system at 11:53 a.m. on July 30th. (Vol. II, Tr. at 47 & 49). He testified that the discs, or DVDs, were made on July 31, 2007, at about 10:25 a.m. and 10:40 a.m. (Vol. II, Tr. at 87). Moody testified that one of the discs had been modified to appear as if it had been made on July 30, 2007, at 6:10 p.m.. (Vol. II, Tr. at 103-104). Moody also testified that a "deep" computer search of the data from the laptop transferred to the True North computer

---

[4]  Lieutenant Baute was more experienced in child pornography cases, and Sergeant Matson had enlisted his assistance on the case. (Vol. I, Tr. at 251-254 & 13). Lieutenant Baute has been a member of the Child Predator Cyber Crime Unit of the Attorney General's Office since August 2005. (Vol. 1, Tr. at 7).

[5]  Lieutenant Baute did not visit True North until July 31 in the afternoon when he interviewed Kuchle. (Vol. I, Tr. at 72-73).

system occurred at 5:04 p.m. on July 30th, and again at 8:21 a.m. on July 31st. (Vol. II, Tr. at 95-100). There is no direct evidence that law enforcement searched True North's tower or the DVDs before a search warrant was obtained on August 1st. (Vol. I, Tr. at 118). There is no evidence or report that any law enforcement member was present at True North around 5:00 p.m. on July 30th. The only possible evidence that places Officer Vieno at True North at times other than in his report is Kuchle's statement to Lieutenant Baute that Officer Vieno came to the store around 8:00 a.m. on July 31st. (Vol. II, Tr. at 100). Kuchle testified that he did not remember Officer Vieno coming to the store on July 31st at all. (Vol. I, Tr. at 205-207).

With respect to the laptop, Lieutenant Baute picked up the old laptop and the two DVDs of the transferred data on August 1, 2007, from Officer Vieno's locker at the Kenneth City Police Department pursuant to the search warrant.[6] He turned them over to the Federal Bureau of Investigation, who then turned them over to the FDLE. Lieutenant Baute testified that FDLE performed the forensic examination before he picked up the laptop on June 14, 2008, almost one year later. (Vol. 1, Tr. at 74). Lieutenant Baute reviewed the FDLE forensic results (an 11,000 page report), not the computer itself, and two DVDs[7] and five archive discs from FDLE. (Vol. 1, Tr. at 74-75).

_____

[6] See docket 61, Exh. D (Supplemental police report of Lieutenant Baute).

[7] These two DVDs (FDLE forensic discs) are not the same two DVDs that were previously made by True North. (Vol. I, Tr. at 76).

Based on all of the evidence adduced at the suppression hearing, defense counsel took the position that he had absolute forensic proof that searches into either or both the True North computer system and the DVDs of the data transferred from Defendant's old laptop took place after the old laptop had been seized on July 30th and before the search warrant was executed on Aug. 1st. (Vol. I, Tr. at 260-261). In his post-hearing brief, the Defendant urges this Court to find that the police intentionally covered up a search of the data on the DVDs that occurred on True North's system before the search warrant was executed on August 1st, specifically at 5:04 p.m. on July 30th, and again at 8:21 a.m. on July 31st. The Defendant claims that the only logical conclusion is that Officer Vieno and Kuchle searched the data at those two times on July 30th and July 31st. Therefore, the Defendant contends, Officer Vieno did not take the DVDs with him the morning of July 30th because the two DVDs were not made until the morning of July 31st at 10:25 and 10:40 a.m. The Defendant espouses that a cover up is evidenced by the modified date and time of 6:10 p.m. on July 30th to reflect that the DVDs were made at that time. According to the Defendant, both his Fourth Amendment rights in the warrantless searches by Officer Vieno on July 30th and July 31st of the DVDs, and his Fifth Amendment rights in both the false police report stating that Officer Vieno took the DVDs on July 30th when they were not created until July 31st and the cover up to make the creation of the DVDs show a date of July 30th, have been violated. The Defendant further urges this Court to

weigh the gross negligence of the police in documenting the custody of the pertinent evidence— the DVDs, the laptop, and the surveillance tape.

## ANALYSIS

### Private Search

At the outset, it is clear from the briefing that the Defendant is not now making an argument that either employee of True North was acting in concert with law enforcement when each looked at the files in the process of confirming the transfer of data from the laptop to True North's computer system. As will be explained, any such argument that the employees were agents of the government would have been unsuccessful based on the evidence. Zadnick testified that while True North had performed some work for the Kenneth City Police Department in the past, in particular fixing servers on an as-needed basis, his company had no arrangement with the police department with respect to improper information found on customers' computers. (Vol. I, Tr. at 221-223). He testified that while he had called on the police for other matters, he had never called on them to report pornographic data. (Vol. I, Tr. at 221-223). Kuchle confirmed that the police department had been a client of True North. (Vol. I, Tr. at 191). He testified that he had never acted as an informant for the police. (Vol. I, Tr. at 215). This incident was the very first time he had called on the police for data found on a customer's computer. (Vol. I, Tr. at 223).

Since True North's employees were not acting as agents of the government, any after-transfer search of the data on True North's computer system is deemed a private search.  A private search, or one conducted by private citizens, even an unreasonable one, is not protected by the Fourth Amendment, which protects against unreasonable governmental searches or seizures.  See United States v. Steiger, 318 F.3d 1039, 1045 (11th Cir. 2003) (holding that computer hacker's unsolicited tip that defendant possessed child pornography on his computer did not implicate Fourth Amendment).[8]  "As long as police officers do not exceed the scope of the private search, they may view or replicate the results of that search without violating the Fourth Amendment."  United States v. Shelton, 418 Fed.Appx. 514, 517 (7th Cir. 2011) (unpublished opinion) (citing United States v. Jacobsen, 466 U.S. at 109, 117-18, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)); see also United States v. Garcia-Bercovich, 582 F.3d 1234, 1238 (11th Cir. 2009) (holding

---

[8]    See also United States v. Grimes, 244 F.3d 375 (5th Cir. 2001) (holding that computer repair shop's employee's search of customer's temporary internet files with permission from his wife, which disclosed child pornography, was private search not subject to Fourth Amendment analysis); United States v. Runyan, 275 F.3d 449, 457 (5th Cir. 2001) (holding that estranged wife's discovery of child pornography on computer in marital home, and later delivery to law enforcement, did not constitute search violative of the Fourth Amendment because it was a private search); United States v. Hall, 142 F.3d 988, 993 (7th Cir. 1998) (holding, on facts of the case, that computer repair shop's employee's search of customer's computer files during repair disclosing child pornographic material was private search not subject to Fourth Amendment protections); United States v. Scott, 2008 WL 4949121, at *4 (W.D. N.C. 2008) (holding that defendant had no continued reasonable expectation of privacy after the computer technician's view of child pornographic images where defendant had taken his computer in for repair authorized by defendant).

that police search of one of thirteen boxes of marijuana following unsolicited private search of a different box was within the same scope as the initial private search because district court did not err in considering entire shipment a "single package" covered by single shipping manifest). The issue becomes, therefore. whether the police, specifically Officer Vieno, searched the data before the warrant was executed, and if he did, whether that search exceeded the scope of the private search.

## Scope of Any Warrantless Search

The uncontroverted evidence shows that Officer Vieno responded to True North on July 30th around 1:30 p.m. When he left on that day, he at least had Defendant's old laptop and True North's surveillance tape with him. In his testimony at the suppression hearing, he indicated that he is certain that he took the old laptop and the surveillance tape when he left on July 30th, but he is uncertain whether he also took the DVDs[9] containing the data from the old laptop's hard drive. He does not remember whether he took the DVDs on July 30th or July 31st. Although in his police report, prepared a couple of days after the event, he states that he also took the DVDs of the transferred data,[10] he testified

_____

[9] The Court finds that the confusion over whether there was one or two DVDs is not determinative of any legal issue in this case.

[10] Officer Vieno's report for the date of July 30, 2007, reads in pertinent part:
I took custody of the Dell Laptop Computer belonging to
Meister for evidence. I also took a DVD disk that contained
pornographic material that was on the computer. I did not
turn on the computer or look at any contents of the computer
at this time. I also attained a copy of the video surveillance
from the business showing the suspect parking his vehicle,

at the hearing that he did not read his report to necessarily mean that he had the DVDs with him at the same time he had the laptop and the surveillance tape when he left on July 30[11]. Kuchle remembers making the DVDs from the data transferred from the old laptop to True North's computer system, but he does not remember whether he made them on July 30th or July 31st. Zadnick does not even have an independent recollection that DVDs were made.

---

exiting the vehicle, and coming into the business with the laptop computer which will be placed into evidence.

. . .

I took the computer, DVD, and surveillance video back to the Kenneth City Police Department and packaged those items in secure evidence bags. I then placed the above items in locker #10 which I was the only one having the key or access to.

See docket 61, Exh. B. His supplemental report, signed August 3, 2007, indicates that Officer Vieno met with Lieutenant Baute and an FDLE agent on July 30, 2007, which he testified at the hearing was a typographical error with respect to the date. They actually met on July 31, 2007, in the afternoon. The supplemental report states that the three went to True North after the meeting to speak further with the witnesses. See docket 61, Exh. E.

[11]

[Defense counsel]: You're saying that when you read those phrases that does not appear to you to say that they were all done at one time, is that what you're saying, is that your testimony?
[Officer Vieno]: Like I said earlier, I don't recall when I got the discs. Like I say, it basically says I did take those from True North store, but I don't recall when I got the discs. I remember specifically getting the computer and surveillance tape, but I don't remember when I got the discs.

See Vol. I, Tr. at 154-155.

Officer Vieno testified that he did not search the data on Defendant's laptop, on True North's computer system, or on the two DVDs containing the data collected from the laptop.  There is no evidence at all that places Officer Vieno at True North on 5:04 p.m. on July 30th.  The only evidence that indicates a possibility that Officer Vieno could have viewed the True North computer system at 8:21 a.m. on July 31st is Kuchle's statement to Lieutenant Baute, given the afternoon of July 31st, that Officer Vieno had stopped by True North that morning.  (Vol. I, Tr. at 206).  No time frame was given in the statement as to exactly what time that morning, and Kuchle at the suppression hearing testified that he did not remember whether Officer Vieno had stopped by the morning of July 31st.  (Vol. I, Tr. at 205-207).  He testified that he really did not remember Officer Vieno being at True North at all on July 31st.  (Vol I, Tr. at 205).  All the evidence, with the exception of Kuchle's statement, shows that Officer Vieno went to True North only the afternoons of July 30th and July 31st, and it shows that he left long before 5:04 p.m. on July 30th.[12]

The Defendant relies totally on circumstantial evidence, which consists of the dates and times of the searches and data manipulation testified to by his expert.  While Defendant's scenario is possible, it is not necessarily probable.  There were two people, based on this record, who definitely had access to the data transferred to True North's

---

[12]   The first time Lieutenant Baute traveled to True North was the afternoon of July 31st.  Lieutenant Baute took custody of the contents of Officer Vieno's locker on the afternoon of August 1, 2007, pursuant to a search warrant.

computer system: Kuchle and Zadnick.  Zadnick as owner and Kuchle as his only employee not only had access, but both were skilled in computers.

Assuming Moody's testimony is true, and the Government has not questioned its accuracy with respect to the time the DVDs were made and the existence of the two searches on True North's computer system, the evidence does not necessarily require a conclusion that law enforcement searched the data.  There is no evidence that any law enforcement officer was physically present at True North at either 5:04 p.m. on July 30th or 8:21 a.m. on July 31st.  The statement of Kuchle, and he does not remember the content of the statement, does not mention a time in the morning that Officer Vieno was at True North.  Kuchle's testimony reveals that he does not get to work until 9:00 a.m.

The evidence adduced at the hearing does not confirm that any law enforcement officer participated in a search of the data at the two times in question.  This Court will not be forced to accuse or guess about who did search the data, assuming Moody's testimony regarding the times is infallible.  The two employees of True North had access to the data at the times in question, and even if Officer Vieno was there, as the Defendant posits, any search of the data would not have gone beyond the scope of the private search conducted by Kuchle in confirming that the data was properly transferred from the laptop to True North's computer system.  In short, this Court does not find the circumstantial

evidence strong enough to place Officer Vieno at True North at either 5:04 p.m. on July 30th or 8:21 a.m. July 31st.[13]

The Defendant makes much of Officer Vieno's "false" police report stating that he left on July 30th unequivocally with three categories of evidence— the laptop, the surveillance tape, and the DVDs.  It is conceivable, however, that Officer Vieno thought he was writing a clear report a couple of days later, when he in fact was not.  He testified that he might not have remembered that he actually retrieved the DVDs on July 31st instead of July 30th.  (Vol. I., Tr. at 116, 153-157).  Officer Vieno noted that the paragraph stating that he took all three items back to the police station is not dated. (Vol. I, Tr. at 155-159).  Based on this record, the Court concludes that the government did not exceed the scope of the original private search.

## Expectation of Privacy

The Defendant's argument that he had a reasonable expectation of privacy in the child pornographic data on his laptop when he left it at True North is without merit. There are both subjective and objective components to the expectation of privacy that

---

[13]   With respect to the Defendant's theory that only Officer Vieno would have had a motive to backdate the creation of the DVD's, it is not outside the realm of possibilities that one of the two employees would have had a reason to backdate the creation to the night before.  In any event, the backdating of the creation of the DVDs is meaningless because it was after 2:30 p.m. on July 30th.  To show that the DVDs were actually created before Officer Vieno picked them up according to his police report, the time would have had to have been before 2:30 p.m. on July 30th.

must be established by the party alleging the unconstitutional search.  See United States v. Segura-Baltazar, 448 F.3d 1281, 1286 (11th Cir. 2006) (citing United States v. Robinson, 62 F.3d 1325, 1328 (11th Cir. 1995), which relies on Katz v. United States, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967)).  The subjective reasonable expectation of privacy "requires that a person exhibit an actual expectation of privacy, while the objective component requires that the privacy expectation be one that society is prepared to recognize as reasonable."  Segura-Baltazar, 448 F.3d at 1286.[14]

Defendant testified that he would not have taken his computer to True North if he knew that the data had to be viewed as it was being transferred to a new computer.  (Vol. II, Tr. at 5-6).   He testified that True North never told him that the data would be viewed in the transfer process and that he had an expectation that the contents of his computer would remain private.  (Vol. II, Tr. at 6-8).  Zadnick did tell Defendant that he needed a new laptop, and Defendant told him what data needed to be transferred off of his old laptop.  (Vol. II, Tr. at 5).  There was simply no discussion about how the transfer was to

_____

[14]   See also United States v. Norman, 2011 WL 4551570, at *1 (11th Cir. 2011) (unpublished opinion) (holding that even if defendant held subjectively reasonable expectation of privacy in shared computer files containing child pornography, expectation was not objectively reasonable because computer contained peer-to-peer file-sharing program and contents of folder was in public domain) (citing United States v. Epps, 613 F.3d 1093, 1097-98 (11th Cir. 2010)); United States v. Durdley, 436 Fed. Appx. 966, 968 (11th Cir. 2011) (unpublished opinion) (holding that defendant had no expectation of privacy in thumb nail drive left in county-owned, common-use computer); United States v. King, 509 F.3d 1338, 1341 (11th Cir. 2007) (holding that defendant did not have reasonable subjective expectation of privacy in his computer files containing child pornography that were remotely accessed over a military computer network).

be accomplished.  Defendant could have questioned exactly how the transfer would be performed and then told True North to return his old laptop instead of transfer the data to new computer.

The cases involving individuals who take their personal computers to a computer repair shop for repair, without more, show that, without government action, those individuals do not, in general, enjoy a reasonable expectation of privacy in the personal files on their computer.[15]  Granted, the particular facts of any given case may give rise to a different conclusion, such as in United States v. Barth, 26 F.Supp.2d 929 (W.D. Tex. 1998).  The Defendants' reliance on Barth, however, is misplaced.

In Barth, the defendant gave the hard drive of his personal computer to a self-employed computer technician for repair of a problem wholly unrelated to the specific, closed, individual files that contained child pornography.  The particular repair did not

---

[15]  See United States v. Caron, 2004 WL 438685 (D. Me. 2004) (holding that defendant who brought his personal computer to shop for repair did not have reasonable expectation of privacy in files stores on computer left for repair because view of files stored was foreseeable); United States v. Grant, 434 F.Supp.2d 735, 744-45 (D. Neb. 2006) (holding that defendant did not have reasonable expectation of privacy in his home computer where he told technician he would find raunchy photographs on computer that should be saved); United States v. Tosti, 2010 WL 4510120, at *4 (N.D. Cal. 2010) (holding that defendant had no reasonable expectation of privacy in child pornographic images on computer he took in for repair because initial viewing was performed by computer technician in the course of the repair who was not a government actor); United States v. Vallimont, 378 Fed.Appx. 972 (11th Cir. 2010) (unpublished opinion) (holding warrantless search permitted where law enforcement viewed child pornographic material on defendant's computer after he "frustrated his expectation of privacy by revealing [contents]" to child victim).

require the opening of closed files, and it did not involve a necessary transfer of data.  At the time, unbeknownst to the defendant, the computer technician worked as a confidential informant for the FBI.  The technician called the FBI as soon as he opened a "JPEG picture file" and saw that it contained child pornography.  He then continued to open more files on the hard drive after he had spoken with the FBI.  The Barth court found that the initial search by the technician did not violate the Fourth Amendment because he was not a government actor at that point; however, his searches conducted after he called the FBI did violate the Fourth Amendment because he was then considered a government actor.  After the hard drive was taken into custody by the police, their officers' subsequent *warrantless* search that went beyond all searches by the technician, was found to have exceeded the scope of the private search.  The court noted that an "unusual fact pattern" was before it.  Barth, 26 F.Supp.2d at 936.

Barth is distinguishable on at least two grounds.  First, True North's employees were never government actors and, therefore, the search and any other searches that they may have made of the data were not performed with the knowledge of the government.  If Moody's testimony is true that the data was searched at 5:04 p.m. on July 30th and at 8:21 a.m. on July 31st on True North's system because the tapes were not created until the morning of July 31st after 8:21 a.m., then the placement of Officer Vieno at True North on the late afternoon of July 30th and the early morning of July 31st would convert these searches into ones protected by the Fourth Amendment.  As this Court has already

articulated, the evidence does not lead to the sole conclusion that Officer Vieno was the one who conducted the "deep" level searches on July 30th and 31st. It is therefore irrelevant under these facts that Defendant may have expected privacy in the files on his laptop that he gave to True North to repair because there was no governmental search conducted until after the warrant was executed. The transfer of data was performed with the consent of Defendant, and Kuchle was required to confirm that the data had been properly transferred by matching the names of the files with the data inside.

Second, the evidence does not suggest that Officer Vieno's request to create the discs and order to destroy the data from True North's computer system caused the search performed by Kuchle confirming the transfer of the data to exceed the scope of the original search in the initial transfer. As the Defendant concedes, if the "deep" level searches conducted on July 30th and July 31st were performed by True North's employees, then the Fourth Amendment's protections do not apply to those private searches. In any event, the raw meta data necessary to establish whether those searches exceeded the scope of the initial search was erased from True North's system. True North was not made an instrument of the government when they were directed to create the discs from data on their own computer system, or when they were instructed to erase the data. The copying was simply a means to remove the contraband from the store's own system so that it would not be harboring the illicit material. Although the Defendant urges this Court to infer that the ordered erasure of the data on True North's computer system was intended

to destroy evidence of any further searches that could have occurred, and consequently could have been discovered, the Court finds no compelling reasons to make those inferences.  On this record, the government did not search the data until after the warrant was executed on August 1st.

In sum, although Defendant did not think that True North was required to transfer the data to their system before placing it on his new laptop, the testimony of True North proves otherwise.  According to True North, they were equipped to make the direct transfer, and its normal business practices were followed.  That Defendant never inquired about those practices, never confirmed that the manner of transfer would not divulge his files, and never took any precautionary measures to protect his files, belies his position that he maintained a subjective expectation that he had a right to privacy in his files containing child pornography.  True North's consent to turn over the data was unnecessary because no expectation of privacy existed under the facts of this case.

## Fifth Amendment Concerns

Having concluded that no violation of the Defendant's Fourth Amendment rights occurred, the Court finds that law enforcement's conduct does not so shock the conscience[16] that it does not comport with constitutional mandates.  In any event,

---

[16]  See County of Sacramento v. Lewis, 523 U.S. 833, 846-47, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (holding that in due process challenge to executive action, governmental behavior may be so egregious so as to "shock the contemporary conscience").

unlawful search and seizure claims are more appropriately analyzed under the Fourth Amendment as opposed to the Fifth Amendment's substantive due process clause.  <u>See</u>, <u>e.g.</u>, <u>Glover v. Eight Unknown DEA Agents</u>, 225 Fed. Appx. 781, 782 n. 1 (11th Cir. 2007) (unpublished opinion).

It is therefore **ORDERED AND ADJUDGED** that the Motion to Suppress (Dkt. 61) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on January 26, 2012.


    _s/Richard A. Lazzara_____
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**


<u>COPIES FURNISHED TO</u>:
Counsel of Record